IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| **LEON DUELMER** | | **PLAINTIFF** |
| VS. | NO. 4-01-CV-00668 SMR | |
| **CITY OF SHERWOOD, ARKANSAS** | | **DEFENDANT** |

## FIRST AMENDED COMPLAINT

**COMES THE PLAINTIFF, Leon Duelmer,** by and through his attorney, Edward G. Adcock, and, pursuant to the Court's direction in its February 5, 2004 Memorandum and Order, proffers the following First Amended Complaint, *to wit:*

### INTRODUCTION

This is an action for declaratory, injunctive and monetary relief alleging, as more specifically set forth below, that the Defendant, City of Sherwood, AR, did deny Plaintiff Leon Duelmer rights guaranteed him under the Constitution of the United States, specifically, his right to procedural due process, his right to substantive due process and his right to the equal protection of the law. [1]

### I.

### JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1343(a)(3)&(4) and 42 U.S.C. Section 1983 which creates a private cause of action to redress deprivation of rights guaranteed by the Constitution of the United States.

---

[1] Plaintiff's claim that the ordinance at issue herein was unconstitutionally vague is not repeated herein solely because it was dismissed by the Court in its February 5, 2004 Memorandum & Order. It is not waived solely because it is not repeated herein.

2. Venue of this Court is proper pursuant to 28 U.S.C. Section 1391(c) in that all the acts and conduct complained of herein and all claims raised herein arose with the corporate boundaries of the City of Little Rock, Pulaski County, Arkansas encompassed within the Western Division of the Eastern District of Arkansas.

## II.

## THE PARTIES

3. Plaintiff Leon Duelmer is a citizen of the United States residing in Pulaski County, Arkansas. At all times pertinent hereto he owned numerous rental properties within the corporate boundaries of the City of Sherwood, Arkansas, including the two (2) specifically at issue in this action, *to wit,* those properties located at 204 Summit and 204 Cherrywood. *See* Section III, The Facts, below.

4. Defendant, City of Sherwood, AR, (hereafter "City" or "Sherwood") is a governmental entity created by and operating pursuant to the laws of the State of Arkansas. All of the acts and conduct of all Sherwood officials/employees complained of herein constitute "state action" within the meaning of 42 U.S.C. Section 1983.

## III.

## THE FACTS

5. Plaintiff incorporates and adopts by reference as if set forth word-for-word herein each and every averment contained in his Complaint for Declaratory, Injunctive And Other Relief filed of record on September 21, 2001. Plaintiff incorporates and adopts by reference as if set forth word-for-word herein Exhibits A, B, C, D and E appended to his Complaint for Declaratory, Injunctive And Other Relief (hereafter "Ex _") filed of record on September 21, 2001.

6.      At all times pertinent hereto Plaintiff owned properties located within the corporate boundaries of the City of Sherwood, Arkansas, including those properties located at 204 Summit and 204 Cherrywood. *See* Paragraph No. 3 of Plaintiff's original complaint (hereafter "O/Com at # _").

7.      On May 29, 2001, Sherwood enacted Ordinance No. 1531. *See* O/Com at # 2 & Ex A / Incorporated by reference.

8.      Plaintiff incorporates and adopts by reference as if set forth word-for-word herein each and every averment contained in Paragraph Nos. 1 through 24 of Plaintiff's Statement of Contested Facts filed of record herein on January 20, 2004. Plaintiff incorporates and adopts by reference as if set forth word-for-word herein each and every averment contained in Exhibits 1 through 5 appended to Plaintiff's Response to Defendant's Motion for Summary Judgment filed of record herein on January 20, 2004.

9.      Mr. Paul L. Brown, a City code officer, inspected the Cherrywood Property on May 23, 2001. He says the thought at the time that the property "needed to be condemned." The property was posted on May 24, 2001, before enactment of Ordinance No. 1553. Despite Mr. Brown's finding that the property "needed to be condemned," Plaintiff Duelmer, the record owner, was not informed of the inspection, the posting or the potential condemnation at the time. Nor was he informed of the code violations at the time. At that time, Plaintiff Duelmer had no knowledge or actual notice of the extant code violations.

10.     The Summit Street property was inspected and posted on an unspecified date. The Warning Notice bears a date of May 9, 2001, again, before enactment of Ordinance No. 1553. Plaintiff Duelmer, the record owner, was not informed of the

inspection or the posting at the time. Nor was he informed at the time of the code violations found on the premises. At that time, Plaintiff Duelmer had no knowledge or actual notice of the extant code violations.

11. Plaintiff Duelmer's first notice of the inspections, the postings or the code violations on the Cherrywood and Summit properties came when he received in the mail July 9, 2001 letters from Mr. Brown, one month after one posting and two months after the other. The letter indicated that the City had already decided (at least tentatively) to condemn the property and informed Plaintiff that the City Council would consider the question of condemnation at its meeting of July 31, 2001. Prior to receipt of Mr. Brown's letters, Plaintiff Duelmer had no knowledge or notice whatever regarding the alleged code violations existing at these two structures.

12. Between his receipt of Mr. Brown's letters and the City Council's July 31, 2001 meeting at which condemnation was considered, Plaintiff Duelmer was not allowed by the City to work on either of these properties. The Cherrywood property was closed and secured by the Sherwood Police Department. The Summit property had been posted as uninhabitable. The City would not issue Plaintiff Duelmer permits to work on either property. He was unable to get a contractor into either property for that reason.

13. During that time, the City would not permit him to work on the properties himself. Since the City had arrested him in the past for working on his own properties without a permit, even when the work he was doing was general maintenance that did not require any sort of state license to complete, and because of the obvious enmity between Duelmer and officials of the City, Duelmer's attorney advised him not to enter upon the properties without the City's express permission, which was not given.

14. Abraham Bogoslavsky, attorney at law, appeared on Mr. Duelmer's behalf at the July 31, 2001 hearing before the City Council. The council was overtly hostile to Mr. Duelmer. Virtually every council member except the Mayor was openly rude and took an openly contemptuous tone in his or her comments regarding Mr. Duelmer. The same was true in their questions directed to Bogoslavsky. Throughout the "hearing," there were comments made by council members to the effect that "we're going to send a message to Leon Duelmer," that they were "tired of Leon Duelmer" and that the council was going to "make an example" of him. The Council was obviously biased against Mr. Duelmer and appeared to me determined to condemn his properties.

15. Most of the numerous "violations" touted by City staff at the hearing involved relatively minor, cosmetic problems. Admittedly, for example, both houses had been trashed by the previous tenants and, on Cherrywood, there had been an explosion of sorts triggered by the tenant's meth lab. And, the code officers testified that the Cherrywood tenants kept their garbage inside for fear the police would search through it for evidence of manufacturing paraphernalia. Those facts account for most of the uncleanliness and disorder evident from the face of the City's pictures of the properties.

16. Both houses, however, were basically structurally sound. The City's case was presented by Michael Clayton, City Engineer, whose sole argument regarding the structural integrity of the Summit property was that the house would not withstand hurricane-force winds. On Cherrywood the foundation needed shoring but that could be done with the simple expedient of pouring concrete footings, something Mr. Duelmer stood ready and able to do.

17. The condition of the properties did not pose a realistic threat to the life, health or safety of citizens and, hence, did not merit demolishment.

**18.** Nevertheless, consistent with its evident bias, the Council passed a resolution condemning the properties, with the caveat that they would not be razed if they were brought up to code within 30 days. However, after passage of the resolution giving Mr. Duelmer 30 days in which to abate the "nuisances," the City still refused Mr. Duelmer or his work crews access to the properties to do the work required to avoid demolishment. Sometime during this initial period Mr. Duelmer was actually arrested by a Sherwood Police Officer for being in one of his properties attempting to hang sheet rock. Duelmer's attorney questioned the City Attorney about the legality of arresting someone for working without a permit in *his own property* when the work being performed was nothing more than general carpentry, not something requiring state licensure.

**19.** Bogoslavsky wrote the City Attorney on Monday, August 13, 2001 regarding this problem. The problem was resolved; by that time, however, over half of Mr. Duelmer's time window for repairs had elapsed. The time crunch was exacerbated by the fact that Mr. Duelmer was denied access to the properties in the period between his receipt of the City's notice of possible condemnation and the July 31, 2001 hearing before the Council.

**20.** The City finally issued building permits on August 14, 2001.

**21.** After the permits were issued Mr. Duelmer's associate, Matthew Carmen, retained the services of J. B. Electric and S & K Plumbing to do the work requiring licensed professionals. The electrical and plumbing work was essentially completed by the time the window for work was completed. Carmen also sought and received a bid from a competent contractor to repair the foundation on the Cherrywood property.

Footings into which we were going to pour concrete to secure the foundation were dug. However, the City's code enforcement personnel refused to let them pour the concrete that would have buttressed the foundation.

**22.** Only on August 14, 2001 was Mr. Duelmer allowed access to the properties and issued building permits.

**23.** When Mr. Duelmer was originally denied access to the structures, his contractors naturally went on to other jobs. When the City finally issued a permit on August 14, 2001, he couldn't get the contractors to immediately walk away from other work and come back to his properties. As a consequence, very little of the work had been done by the time the City inspected on Friday, August 17, 2001, only three (3) days after the permit was issued.

**24.** When he finally got access, Duelmer worked feverishly to bring these properties up to code. The following is a list of projects completed on the properties:

> electrical work completed on Summit property
> new siding was installed on the Cherrywood house
> new windows were installed on the Cherrywood house
> new doors were installed on the Cherrywood house
> the ditch to provide footings for Cherrywood foundation were dug
> both properties had been cleaned and cleared of debris
> (caveat – construction dust and clutter still present)
> both properties had been cleaned
> the inside of the Cherrywood house had been painted
> code violations were abated at both houses

**25.** The Cherrywood house had some foundation problems. Duelmer arranged for a licensed contractor to pour concrete footings to secure the foundation. The City would not allow him to pour the footings.

**26.** When the original time window of 30 days elapsed the City would not let Duelmer work any more on the property. Through his attorney he complained. Duelmer

got word through Carmen through one of one of the City's code enforcement officers that he had an additional week – the 2nd week in September -- in which to work. Again, however, he had problems getting work crews that had been called off the properties back to work again. After this second short work period the City would never again let Duelmer in to work on the properties nor would it issue building permits to anyone trying to get permission to work on the properties.

**27.**   Essentially, aside from the foundation work on one property that had been stopped by the City, by the end of the repair time window Mr. Duelmer had abated virtually all the violations that could possibly pose any sort of danger to anyone. And the foundation would have been completed had the City allowed it.

**28.**   Given the progress that had been made, Bogoslavsky felt the City would grant a reasonable extension of time in order to complete the smaller, cosmetic repairs. So, toward the end of the repair time window he talked with both the City Attorney, Steve Cobb, and the Mayor, Bill Harmon, seeking a little more time in which to complete the work. Cobb indicated that he was not the decision maker *vis-à-vis* that issue. The Mayor deferred to Cobb and both, after they talked to Bogoslavsky, failed to return his phone calls. Obviously, the City seemed determined to tear down Mr. Duelmer's properties regardless what progress he made toward rehabilitation.

**29.**   Nevertheless, while, admittedly, there remained some cosmetic work to be done, aside from the foundation work on one property that had been stopped by the City, by the end of the repair time Duelmer had fixed all the things that could possibly pose any sort of danger to anyone. And the foundation would have been completed if the City had allowed it

30. After the time window expired, the City refused to allow Mr. Duelmer to continue work on the properties. In addition, the City refused to issue any further building permits.

31. From that point forward no work was done on the properties. At the point Mr. Duelmer was ordered off his own properties, the houses were boarded and secured, the major work was completed, the violations posing any danger to anyone were abated, and, had the City simply given Mr. Duelmer a little more time to complete repairs, the houses would have been entirely rehabbed. The City could have ensured his continued performance simply by assessing daily fines until the work was completed.

32. Subsequently, despite the fact that significant and apparent progress toward total rehabilitation had been made, after approximately a year delay, both houses were demolished by the City without further notice to Plaintiff Duelmer.

## Damages

33. As a result of the acts and conduct of the City as described above Plaintiff suffered actual injury, including pecuniary loss as well as extreme emotional distress and mental anguish.

## Equal Protection Claim

34. Upon information and belief, no other property owner in the City of Sherwood has been treated in a like manner, specifically, no other property owner in the City of Sherwood has had his properties demolished at a point in time when the violations alleged to pose a threats to the life, health and safety of citizens had been abated. Under the facts and circumstances set forth above, *see* Paragraph Nos. 5 through 32, above, Plaintiff was and is a "class of one" and, as a consequence, has been denied

the equal protection of the law secured to him by the 4th, 5th and 14th Amendments to the Constitution of the United States of America.

### Procedural Due Process Claim

35. Because of the obvious bias of the City's ultimate decision maker *vis-à-vis* the issue of demolition of Plaintiff's properties and because he was denied adequate notice at a meaningful time, Plaintiff was deprived of his property without procedural due process of law in violation of the 5th and 14th Amendments to the Constitution of the United States of America.

### Substantive Due Process Claim

36. The acts and conduct of Sherwood complained of herein, *see* Paragraph Nos. 5 through 32, above, specifically its refusal to allow Plaintiff meaningful and adequate access to his properties for rehabilitation, it's inordinately short window of opportunity for repairs and its demolishment of same when the violations alleged to pose a threats to the life, health and safety of citizens had been abated, were arbitrary and capricious and did not serve a legitimate governmental purpose and, hence, denied Plaintiff his right to substantive due process in violation of the 5th and 14th Amendments to the Constitution of the United States of America.

### IV.

### CAUSES OF ACTION

37. Plaintiff Leon Duelmer incorporates and adopts Paragraph Nos. 1 through 36, above, as though specifically set forth word-for-word at this point and sets forth the following causes of action, to wit: that the demolition of Plaintiff's houses deprived him of the equal protection of law; that the demolition of Plaintiff's houses deprived him of

his property without procedural due process; and, that the demolition of Plaintiff's houses were not in furtherance of a legitimate governmental objection and, hence, deprived him of substantive due process, all in violation of the 4th, 5th and 14th Amendments to the Constitution of the United States of America.

## V.

## PRAYER FOR RELIEF

**WHEREFORE,** in consideration of the foregoing, Plaintiff Leon Duelmer prays the Clerk to set this matter for trial by the Court and, upon a hearing and verdict thereon, Pray this Court to issue a Judgment:

**(a)** declaring that the acts and conduct of the Defendant complained of herein deprived Plaintiff of the equal protection of law in violation of the 4th, 5th and 14th Amendments to the Constitution of the United States;

**(b)** declaring that the acts and conduct of the Defendant complained of herein deprived Plaintiff of his property without procedural due process in violation of the 4th, 5th and 14th Amendments to the Constitution of the United States;

**(c)** declaring that the acts and conduct of the Defendant complained of herein did not serve a legitimate governmental interest and, hence, deprived Plaintiff of substantive due process in violation of the 4th, 5th and 14th Amendments to the Constitution of the United States;

**(d)** enjoining Defendant from continuing the practices at issue herein;

**(e)** awarding Plaintiff actual and compensatory damages in an amount to be established at trial, but in any event greater than that necessary to establish diversity jurisdiction;

(f)     Awarding Plaintiff his costs incurred in bringing this action, including a reasonable attorney's fee and expert witness fees pursuant to 42 U.S.C. Sec. 1988.

DATED this 18th day of February, 2004

Respectfully submitted,

LEON DUELMER

By: *[signature]*
Edward G. Adcock
Arkansas Bar No. 83001
523 So. Louisiana, Suite 502
Little Rock, AR 72201
Phone: (501) 907-6104
Facsimile: (501) 907-6105
Email: egalaw@aol.com

## CERTIFICATE OF SERVICE

I, Edward G. Adcock, do hereby certify that a file-marked copy of the above and foregoing First Amended Complaint was served upon Mr. David M. Fuqua, HILBURN, CALHOON, HARPER, PRUNISKI & CALHOUN, LTD., P. O. Box 5551, North Little Rock, AR 72119 and upon Mr. Stephen Cobb, City Attorney, 7600 Hwy 107, Suite A1, Sherwood, AR 72120 by placing same in the U. S. Mails this 18th day of January, 2004.

*[signature]*
Edward G. Adcock   # 83001